Next case on the calendar is AMBAC Assurance Corporation v. US Bank National Association Mr. Sandick whenever you're ready. I see you have two minutes reserved for rebuttal. Thank you, Your Honor. My name is Harry Sandick and with my colleague Lee Barnwell we represent AMBAC in this appeal. The decision below should be reversed because the district court erred when it deprived AMBAC of its right to subrogation to stand in the shoes of its insurance. The right to subrogation is mentioned in all of the major documents here. It's mentioned in the insurance policy at pages 326 and 330 of the appendix, in the pooling agreement at page 634, and in the commitment letter at page 386. And in the pooling agreement it's found in section 4.05 which is named the certificate insurance policy in subsection D. And there are a number of provisions in that clause that work together to demonstrate that AMBAC is entitled to receive the amounts that it paid to its insured note holders when those are returned as recoveries as we as they are in the ordinary course and through settlements in the future. In the second sentence it says the insured amounts dispersed by the trustee from proceeds of the certificate insurance policy shall not be disbursed by the trust fund. In other words, when AMBAC pays an insured note holder, that is not treated the same way as an ordinary payment. And the next clause says, nor shall such disbursement of insured amounts discharge the obligations of the trust fund with respect to the amounts thereof. So those notes, if not the note holders, because the note holders have been made completely whole by AMBAC, but those notes still have outstanding balances and are entitled to cash flow from recoveries. The third clause says the certificate insurer shall become owner of such amounts to the extent covered. Excuse me, do I misunderstand? I thought that it was common ground that the balances on the secured notes were written down to zero. So the balances on the insured notes were written down to zero. And the question now is, as recoveries come in, what happens to those amounts? And according to the waterfall structure here, the recoveries are supposed to be paid pari passu, you know, pro rata, to all of the senior notes. There are 10 senior notes, AMBAC insured two of them. When you say recoveries come in, are you talking about additional distributions? Well, recoveries are, it's a defined term in the agreement. It's defined at page 593. And what it refers to, I'm sorry, 594. And what it refers to is monies that come in not through necessarily ordinary cash flow of mortgage payments. This is a mortgage-backed securitization. But in the future, if notes are written down, they can also then be written up essentially as recoveries come in. So how can recoveries come in? There can be $100,000 and it turns out the market improves in $200,000. One of the things that puzzles me is that everybody didn't default on their mortgages, right? I mean, even countrywide. So there must have been some money flowing and there must still be some money coming in in the ordinary course, right? There is still ordinary course payment and there are also recoveries. And so why are recoveries different? If there is money flowing in the recoveries, that is to say, for defaulted mortgages, the mortgage holder, you know, sells off the property and gets 10 cents on the dollar from some mortgages and also money from other mortgages. And then all of that is melded into a single stream that comes back and is distributed. Why isn't it always distributed according to the The reason, Your Honor, is because the contract provides that recoveries are treated differently from ordinary cash flow distributions. That's just the structure of the transaction. That recoveries are funds from previously liquidated loans, such as a foreclosure or a loan modification. They would also include litigation settlements with benefits to the trust. That's just the way in which the contract is written. I understand. But they're not necessarily recoveries for the insurer paid, right? Well, they're recoveries that relate to the collateral in some way in these transactions. They relate to the collateral but not to the specific debt that the insurer covered. Well, it does relate to the specific amounts that the insurer covered just because of the nature of the transaction. So when realized losses come in, they're allocated first to the junior note holders and then they're allocated to the senior note holders. And the losses are essentially they're two classes and the parties refer to them as the super senior and the senior support. And those terms basically are derived from how the realized losses are allocated. They go first to the senior support and then to the senior note holders. So that's how losses are allocated as they come in. And cash flow as it comes in, in the way of recoveries, is allocated equally to all of the senior note holders. So even though the super senior, as the term of art, the super seniors are entitled to be spared the realized losses. Just to be clear, are the super seniors the same as the holders of insured certificates or are they a different category? No. And this is an important point that we think the district court erred. The district court said I guess I'm erring too because I don't think, I must have missed it if it's in the briefs, I don't remember there being a separate category of super seniors that's distinct from the senior securities and is somehow relevant to this case because I don't remember any argument about that. Sure. I do think we discussed in our brief the error that the district court made when she said the central purpose of the policy is to protect, it's the insurance policy, is to protect the senior certificate holders. AMVAC provides insurance to the certificate holders so the certificate holders are made whole. This is on page 27. And that's wrong? That is wrong. And the reason it's wrong is because AMVAC did not insure all of the senior certificates. No, it insured the insured ones. But the point of the insurance policy is to do that and maybe she shouldn't have used the term senior but she means the insured certificate holders, right? Well, on two occasions, she makes this error by conflating the senior holders with the insured holders. Only two of the ten senior holders, only two of the ten senior notes are insured. And so the district court says AMVAC is trying, excuse me, AMVAC is trying to leapfrog and get ahead of its insureds, which of course it can't do under insurance law principles. The make whole doctrine would prevent that. But what the error that she makes is that AMVAC has paid all of its insureds. They have been fully paid. The only question now is as these recoveries come in, does AMVAC stand in the shoes of the people whose, why doesn't the waterfall provision, which the only reference to the certificate insurer in the waterfall provision relates to the CIR account. So why doesn't that control? Well, the waterfall provision does not state all of AMVAC's rights. We have the provision in sections 4.05 of the pooling agreement, which is entitled the certificate insurance policy. And in section B. But then it says, in that provision, it says according to the waterfall provision. So it Well, no, I wouldn't say that it incorporates the waterfall provision. In the last sentence of the provision, it says to the extent the certificate insurer pays any insured amount, either directly or indirectly to the holder of an insured certificate, the certificate insurer will be entitled to be subrogated to any rights of such holder. And that is the provision. And will receive the certificate insurer reimbursement amount, right? That's right. That assumes that these are two different things, right? But you're actually treating them as two different ways to get reimbursement for the payments that they made, aren't you? They are two different things. Subrogation allows AMVAC to recover its claims more quickly. Yeah, but that 4.05 provision, it struck me, you might have a contract that says something like, if the buyer does X, it will be liable for breach of contract, and seller will be entitled to $100,000 of liquidated damages. I would not read that ordinarily as meaning, because it says you will be liable for breach of contract, you can get all kinds of damages, and you can also get the $100,000 in liquidated damages too. It's in effect, there's an implied, therefore, you'll be liable for breach of contract, and therefore, the seller gets $100,000 in liquidated damages. So, and maybe this is, you'd say this is just an ambiguity, but it seems to me it is not an unreasonable reading of the contract, at least, to say that this means you'll be subrogated, and therefore, you get the CIRA. Well, the reason why we don't think it's a reasonable reading of the contract, Your Honor, is because you have all of these references to subrogation throughout. Yeah, but this is a somewhat unusual insurance contract, it seems to me. This is not a case where the certificate, I buy a certificate, and I think, you know, everybody's telling me this is a rock-solid investment, it's an A-level thing, and people are buying way down the chain because this is such a great investment. But I'm not sure. I'm going to go get an insurance policy, and I go get an insurance policy. This is a little different. The insurance policy comes with the security. It was negotiated and bought, not by me separately with AMVAC, it was an insurance policy that's built into the whole terms of the contractual arrangement among all the parties, and the creation of these securities. So I'm wondering, in that circumstance, why aren't, if I had a policy of my own, and the insurance company said, okay, well, here's what, we're going to make a contract that specifically determines what subrogation rights I had. They could do that, right? Yes. So they could change what the ordinary idea of subrogation might be. So why isn't it all a question of just, what is the best reading of all of these documents that are integrated documents that AMVAC signed, not with these individual certificate holders, but with the trustee, I guess, the creator of the trust. So the reason, Your Honor, is because you have all of these references, even in 405D in the pooling agreement, it talks about AMVAC being the deemed assignee of the holders to the extent that the holders receive money. Your argument is not that they're using the term subrogation to mean something other than it's generally understood to mean. You're saying that they're just incorporating the general concept of subrogation, right? That's right. So I understood your position to be that even if subrogation wasn't mentioned in the contract, there would just be an equitable right of subrogation that just attaches to any insurer. I think that's right, but here you have- So you didn't even need it to be mentioned in the contract, and you still have the same rights. Well, lawyers often mention background principles of law that they wish to make clear or applicable here, and you have- But so if this is a background principle of law, how can it possibly be that a background principle of law is that the insurer can take the place of the certificate holder in the waterfall and get a distribution in a different order? That wouldn't follow from a background principle of law, right? Well, it would. The Wingspread case by Judge LaValle in the Southern District talks about this in a contract setting. And you also have, apart from background principles of law, you have the provisions in the policy and in the pooling agreement and in the commitment letter, all of which talk about AMBAC having a right to subrogation. If the district court is right, then all of these references to subrogation were put in there for no reason at all. That is not what the other- what U.S. Bank says, right? Like there is a right of subrogation, which is to pursue any claims for the debt that you covered against some third party that's responsible for it, right? So like maybe you do have a right of subrogation, but it is that sort of right, and it's not the right to get distributions from the trust. Well, but Your Honor, there is in this context no subrogate- no claims that AMBAC would be subrogated to in the category of third party claims. Is that really true? I mean, we have in this very case, you know, individual certificate holders who are engaging in litigation with Countrywide, right? So there is- there are some claims that the certificate holders have against people who cause their losses, right? In fact, in this case, didn't- didn't AMBAC itself assert its status as a subrogee of the insured bondholders to get- to assert its right to get U.S. Bank to pursue Countrywide? AMBAC has, along with others, asked the trustee to take those actions, but any recovery goes through the waterfall. It does not go- there is no third- I mean, I have the transcripts from the- the PI motion hearing, right, in front of the district court, and it says, AMBAC asserts that its third-party beneficiary status of the trust governing documents in addition to its status as a subrogee of the insured bondholders entitles it to enforcement of defendant's performance as trustee. So that means you did think that you could stand in the and pursue claims that the certificate holders would otherwise have, right? So there is a function of subrogation that, you know, even you acknowledge. But- but those are not- those are all claims within the- within the context of the- the waterfall here. AMBAC, the- the- in order- No, I understand. I understand. So- but that means that the concept of subrogation would have a meaning even if we didn't think that it allowed you to take a different place in the waterfall. It would not be surplusage. It would still have a function that you acted as a sub- that you had rights of subrogation. No, it- it would be surplusage here because the- the- the right to- the right to be subrogated does not in this context allow for any recovery outside of the waterfall. When they're talking about third-party- But now you're just saying that- that- that the term subrogation becomes surplusage if it doesn't mean what you want it to mean, which is that you get to take the place of the insured in the waterfall. But, in fact, it means something, right? Like, you have asserted your rights as a subrogee in litigation, and I don't- Within the context of the waterfall agreement, it does have meaning. But it's- I'm sorry, Your Honor. It's not surplusage because in the context of the waterfall provision, it does have meaning, right? But- but it says subrogated to any rights of such holder. It says AMBAC is the deemed assignee of the holder. All- Well, wait. This is Section 1203 you're talking about. Well, Section 1203 is not a section that is- I'm sorry. That's not what you just- I thought you were just reading from that AMBAC job, the right to exercise all rights of the holders of the insured certificates. Well- Except- Other than the right- Other than the right to receive distributions. And I was going to ask you, you didn't read that part, but that's not what you're reading from? No, I'm reading from Section 405D on page 634, which gives AMBAC and right to be assigned the rights of the- of the subrogates of the insured amounts. But it will be entitled to be subrogated to any rights of such holder to receive the amounts for which such insured was paid- which such insured amount was paid, meaning that they can recover on the debt to the extent of such payment, and will be entitled to receive the certificate insurer reimbursement amount, right? So if we think that actually the concept of subrogation means that you can stand in the shoes of the insured certificate holder and pursue other parties for recoveries on the debt that you paid, this is- this language is totally consistent with that, that you would be subrogated to their rights and you'd be able to pursue those claims, and you also get the certificate insurer reimbursement amount, right? So there's nothing about this language that precludes that interpretation. So the- the reference to it being the deemed- in the prior sentence, the reference to being subrogated- this is in, again, in Section 405D, being subrogated to any rights of such holder shouldn't be read to limit us to that particular aspect of the holder's rights. I mean, if you're pursuing some third party for causing the debt and requiring you to pay to cover the debt of the insured certificate holder, you would be the deemed SME of any claims that that insured has, right? Well, we are pursuing a third party in this claim. We're- the third party is the trust, which has caused a loss to AMBAC. The- But does the- but does the insured certificate holder have a right, a legal right, against the trust to recover the amount of the loss that you covered, that the insurer previously covered? Yes, because if the- if the insured note holder had no insurance and recoveries came in, they would be allocated to 10 senior note holders and- But you don't have a claim until the- the insured certificate or something, right? I mean, it's not that the trust caused the loss or caused the deficiency in the cash flow, right? The trust has refused to pay AMBAC recoveries. The trust has taken the position- But that's this dispute. I'm sorry, that's what? But that's this dispute. Yes. Okay. Right. I think your time- we'll give you a lot extra time, Mr. Sandick. Thank you. We'll now hear from Ms. Rose. Good morning, Your Honors. And may it please the Court, Danielle Rose for U.S. Bank National Association. This Court should reject AMBAC's effort to launch itself into additional and higher places in the RMBS waterfall. The sole issue at stake in this appeal is where is- where under the detailed and expressed contractual provisions is AMBAC entitled- allowed to receive trust distributions. And the contract unambiguously and decisively answers this question. The waterfall has three sections. First, payments go to the senior certificates, then to the certificate insurer, and then to the subordinate certificates. And how do we know this? Because that's exactly what the contract says. The AMBAC- the- under the pulling agreement- It seems like their entire argument rises or falls on 405D's use of the right. They're suggesting that even if that's true, there is some other right they have because of that and that is separate from the waterfall provision. Isn't that the bottom line? That's what they're saying, but it's completely- has no merit under New York law because these are sophisticated parties that agreed to a commercial contract. Now, AMBAC doesn't like the bargain it struck right now, but it struck a bargain- Wait, wait. They do have some- I mean, I didn't understand your position to me that they don't have any rights of subrogation. I thought you just defined those rights differently. Correct, absolutely. So your position is we can give meaning to 405D, it's just not the meaning that AMBAC wants. Correct. So what is that meaning? So when it says that the holder of an insurance- the certificate insurer will be entitled to be subrogated to any rights of such holder to receive the amounts and also will get the CIRA. So what do they get as being entitled to be subrogated? Right. So AMBAC's right as subrogate gives it- within the trust waterfall- gives it the right to receive the certificate insurer reimbursement amount, and AMBAC also has separate rights of subrogate. And AMBAC has asserted, just as you pointed out, Judge Menasci, the rights of subrogate in this action. It allows in its reply brief that the certificate holders do have rights to pursue tort claims, and under the quadrant placed by the New York Court of Appeals, those tort claims are pursued outside of the trust waterfall. And so- it cited in its reply brief- did seek to assert in a different case rights as subrogate to pursue federal securities claims. So there are any number of subrogation rights. They have rights within the contract. They have additional rights that they could have asserted at- just pursue third-party wrongdoers outside the contract. And then within the contract, it's clear how the funds have to flow because AMBAC is identified in only one position, and that's for the certificate insurer reimbursement amount that we've discussed. And that- that- that definition, which was completely ignored in the prior presentation, says that on any distribution date, AMBAC receives all amounts for- for any amounts that it paid for reimbursement other than any amounts it received prior to that distribution date. Whether it's through the trust waterfall or through some other action, it can't- it has to receive on any distribution dates all amounts in that position. And we know what all amounts means because it's plain English, but we also know what it means because the New York Court of Appeals addressed this precise issue in the Goldstein v. Acoustan case, where another litigant took the same position and said all amounts means something net of an undefined contractual term, just as AMBAC is arguing here. And the New York Court of Appeals roundly rejected it in a one paragraph decision because if- if AMBAC wished to receive on a higher position in the trust waterfall, the contract has to say that. And if- and beyond that, section 1203 reinforces that this must be right because it states on its face that AMBAC has all the rights to exercise all the rights of the insurance certificates, unless it's in default, other than the right to receive distributions on the insurance certificates. So the certificate insurer reimbursement amount sets it in one position. 1203 reinforces that. All of the distributions- So just- just to be clear, you're saying that- are you saying that 1203 restricts what conceivably otherwise could be construed as subrogation rights of AMBAC? Well, it's just- it's making it plain. It's- it's- Yeah, I understand that, but is that- is that the way you're conceptualizing this? That they might- absent that, what they- what is being restricted is basically something that is otherwise a subrogation right? Or are you saying it's- it wouldn't be a subrogation right anyway? Well, because the contract is defining the subrogation to be the certificate insurer reimbursement amount, it doesn't need to say that. Well, that's what I'm- that's what I'm kind of getting at. Is the- is the CIRA, in your view, in effect, the way that their subrogation rights get paid? Correct. So that when we go back to 4.05, when it says they're entitled to subrogation and get the payment, that's in- implicitly, there's a therefore. Correct. Rather than these are two separate things, the way the other side argues. Well, I thought you said a moment ago that they could be two separate things. You can pursue rights that the insurance certificate holders have against third parties, as they're doing, and so you can stand in their shoes and pursue any claims to recover for the debt that you paid, and you also get the CIRA. So I'm saying- I think what we were talking about was- was discussing with Judge Lynch was payments through the waterfall. So for purposes of payments through the waterfall, you're entitled- you have a subrogation right, and therefore you get the certificate insurer reimbursement amount. But the CIRA is not something that would be automatically, you know, followed from the concept of subrogation, right? That's a creature of the contract. Correct. And this is the contract- The contract is invoking the concept of subrogation, which is a freestanding thing that exists outside the contract. It is the right to stand in the shoes of the insured and pursue claims to recover for the debt the insured had to pay. But what I'm saying is that this is a contract- this is a contractual subrogation right, and as to trust payments through the waterfall, the contractual subrogation right is memorialized in the certificate insurer reimbursement amount. But AMBEC also does have, as the contract says, it has subrogation rights, and those subrogation rights, whether contractual or underlying- Okay, so your position is that the CIRA is part of their subrogation rights, and the contract is defining it that way. Correct. It's part of their subrogation rights as it pertains to the trust waterfall, but- Because is it the background- is it your background understanding of the law, then? I'm not saying I'm going to go by what yours is. I want to understand what yours is, though. Your understanding is that a contract with an insurance company can define, restrict, qualify, expand what might otherwise be subrogation rights at common law if the contract didn't provide otherwise. Correct. And that this contract can only be understood as limiting whatever they might have had in some other you would argue, I guess, can only reasonably be read as saying that whatever rights to payment that they inherit as, I guess, they're the subrogee. I always get confused about subrogee of subrogore, but as the subrogee, the only money they get comes via the waterfall, via the CIRA payment. Yes, as it pertains to the waterfall, AMBEC unambiguously receives trust distributions in one solitary position through the certificate. So if the agreement didn't modify the rights of subrogation, so if the agreement just didn't tell us it was silent on the scope of the subrogation rights, would that mean that absent the contractual provisions, they would have a right of subrogation that would entitle them to get monies from the trust at a preferential position? It's a complicated question because I think what you're referring to are background principles of equitable subrogation. Right, so if we were relying on the background principles, if the agreement was silent on the question of subrogation? The answer would be, I think, no, because what we're talking about are just liquid loans that have been liquidated that have nothing necessarily to do with the wrongdoing of the third party. The background principle of equitable subrogation is that, one, if there is a third party wrongdoer and there's an insurer, the third party wrongdoer should not escape all liability by virtue of the insurance. And what we're talking about here... So that's right, but I guess you could conceive of the trust as a wrongdoer if, in fact, it didn't meet the threshold amount that it's supposed to provide to all of the certificate holders, right? I don't think you can based on the way this trust structure works. The party that securitized these loans under the contract, it's not the trust. The trust takes those loans, and AMBAC itself, in paragraph 7 of the complaint, says that it is Countrywide's fault that it sustained those losses. So if we take AMBAC's allegations on their face, they're saying that because Countrywide did something bad and put bad loans into this trust, AMBAC had to pay insurance. And if you trace through the common law equitable subrogation principles that the New York Court of Appeals has articulated for 100 years, those equitable subrogation principles give AMBAC the right as subrogee to pursue the third party wrongdoer, which it says is Countrywide. But you don't think U.S. Bank ever is a third party wrongdoer? I would say absolutely not. They do make a claim as subrogee against U.S. Bank, right, in this litigation, where they say U.S. Bank failed to assert its rights against Countrywide. So that's a claim that they would have, where they think that U.S. Bank is being a wrongdoer. But you're saying that when the insured certificate holders don't get the minimum amount, that there's no way to think of U.S. Bank as the wrongdoer in that transaction? Correct. Right, because U.S. Bank just pays out the money that comes in. They're not they don't get paid, whatever money isn't there. The waterfall provision says, this is the order in which people get paid. You have no discretion over that. And if the money runs out at step one, or at step one, or there's no money at all, you're under no obligation to pay anybody. So on the background principles of subrogation, we wouldn't have a CIRA either? No, I don't think so. But the parties contracted to have a subrogation right, which is memorialized within the certificate insurance. You're calling it a subrogation right, but you're saying if we were relying on the principle of subrogation, it wouldn't exist. It really is a creature of the contract. In this contract, it's a creature of contract, yes. So could I just try to get my head around what you're saying? You're saying we don't need to go into what might have been the case absent this contract, because this contract is entitled to define how anything that you'd call equitable subrogation works. It defines it this way, and it might define it a little broader in certain respects than equitable subrogation, if, as you said before, the insurance company might not be entitled to anything from U.S. Bank under subrogation, or it might be narrower to the extent that if there would be an equitable right to step in at the place where their insurance would be, that's taken back because what they get is the sera in the place in the waterfall where the sera comes, and all of that is the deal that they made. That's your argument. And the terminology really is interesting, and it goes into some degree into how we read the contract, but at the end of the day, you're saying that's the most reasonable reading of the contract, and the contract is what counts, not what might have been the case otherwise. Exactly, and the contract unambiguously provides that AMBAC is paid in only one position. Now, one last question from me. I think this is the last time I'm going to ask anybody here, unless Mr. Sandek wants to comment on it and rebuttal. If there were ambiguity, if we've decided we can't make a head or tail of this, has either party suggested that there would be extrinsic evidence that would show that the parties contemplated exactly this happening and had exactly a particularized meaning to what happened in the circumstance which they contemplated when this was created, that the loans would be so bad that nobody got any money at all at some point? Is there any indication that this was foreseen and that either side would have anything to offer by way of extrinsic evidence? I think you're asking, are you asking as to extrinsic evidence as to like this particular situation that AMBAC finds itself? I don't know, because this case proceeded to summary judgment before discovery, but I would point out that... Well, but you would know if you had anything to offer on that subject, and I guess you only find out in discovery if they have anything to offer unless they've claimed that they have something to offer. I was about to get to the next point, a related point, which is that the prospective supplement, which this court has found is appropriate to consider in these circumstances because it's part of a single, ratings forming a single transaction, has exactly, says exactly where AMBAC fits into the trust waterfall, and it says first the senior certificates, then AMBAC, and then the subordinate certificates. AMBAC has taken the position that that is extrinsic evidence and you shouldn't consider that. That's the extrinsic evidence that I'm aware of, that AMBAC's taking the position that it's extrinsic evidence, but I think that the key point here is that the waterfall clearly sets one position for AMBAC, and 405B is entirely complementary to that position, to, as you pointed out, Judge Menasci, 405B explicitly says that the funds have to be distributed through section 501. These are completely complementary. But it would be, it's not impossible to read the contract where the waterfall creates a kind of default rule. If we thought that the term subrogation somehow included the right to take the place of the insured whenever they get any kind of a recovery or an additional distribution from the trust, then you could imagine that that language would create a limited departure from the waterfall. I actually don't think it can, and it goes back to the colloquy that this panel was having earlier, which is that when the insured certificates, the amounts that AMBAC pays in insurance are paid through the waterfall as principal. And so each of these insured certificates starts out with an original class certificate principal balance, and that represents the maximum amount that those certificates can receive. And every time that principal is paid, either through regular trust distributions or because AMBAC is stepping in and to defray what to pay those principal amounts, then every time that's paid under the certificate principal balance definition, it has to be reduced from the original principal balance. So as Judge Lynch said at the outset of this argument, wait, aren't there, isn't there nothing owed on these certificates? The answer is yes, there is nothing owed on these certificates because those certificates had an original class certificate principal balance. It's undisputed that they have received that entire original class certificate principal balance, and there is no mechanism in this trust to pay these certificates anything in excess of that original class certificate principal balance, and there's only one class certificate principal balance for every class of certificates. So once that's paid, it's zero, and there's nothing forevermore that can be paid to those certificates. All right, thank you, Ms. Rose. Thank you. Mr. Sandek, you have two minutes in rebuttal. Thank you. First on the question of ambiguity and discovery, AMBAC proposed discovery. The district court asked that the motion be briefed without discovery. This is at 260 to 267. I do think discovery would shed light on these issues. You know, we argued below, as did the other side, that it was susceptible of an unambiguous reading, but I do think that discovery would shed light. You know, maybe this is not something we but when these things were being marketed, I don't think that many people, now, of course, somebody thought that it was useful to have insurance, but I don't know that anybody was thinking that we'd reach this pass, and that if there was some question, not just whether you're going to get paid, but are you going to get paid at the level of before all the B-class junior holders, you're suggesting that there would have been negotiations or something that we could have testimony about that would make clear that everyone understood that if we arrived at a situation where there was so little value to these mortgages that the CIRA was not going to cover you, so that they had some understanding that you would, that wouldn't be a problem because you'd get paid at the level of your particular set of senior certificate holder insurance. Is that what you're suggesting, that discovery would shed light on what people thought about that or whether they thought about that? I don't want to take the level of generality that Your Honor is describing of a conversation between the parties about that issue, because I took an immense risk in this transaction, and there are people at AMBEC who can talk about how it assessed that risk. There are expert witnesses who can talk about the structure of the insurance industry, in particular, as Your Honor pointed out, the bond insurance industry is different from other kinds of industries, so you could have testimony from the participants. I hear what you're saying. I'm sorry, I took up all your rebuttal. I want to take up one more minute of your rebuttal, Mr. Sandek. Judge Lynch had referenced 1203, and you were referring to something else, I guess, but I do want, how are we to take that language in the parentheses other than the right to receive distribution on insurance certificates? Why isn't that confirmation of their interpretation of this agreement? Sure. So on day one of the transaction, AMBEC, before it pays a claim, before anything happens, has the right to vote the rights of the certificate holders, has the right to pass on amendments, and has a number of what I would call structural rights that would ordinarily belong to the certificate holders. This provision, which is entitled limitation on the right of the certificate holders, says that even on day one, even before AMBEC has made a single claims payment, it is entitled to exercise those rights. Those parentheticals make clear that on day one, AMBEC isn't entitled to cash flow because AMBEC hasn't paid any claims. They're not, they don't want someone to read that provision to think that AMBEC on day one is entitled to cash flow that should go to the insured note holders. But right now, we have a situation where as- You're adding language on day one. There's no language, there's no reference to timing on that. This seems to be a categorical statement to me, not on day one. Well, it's a categorical statement that- On any day, not just day one. On any day, but that's the impact of the statement. It seems to be an odd way, if what, and I think the district court did say this, that AMBEC was giving up its right to subrogation, which is in four or five places in these documents, without it even being mentioned when there is law, which we've cited in our briefs, that subrogation is taken away through a clear statement, not through implication, as the argument is here. Since I took up more of your time, I'll give you one minute to say whatever you want to say. Go ahead. Thank you. As additional recoveries come into the transaction and they go up to the insured note holders, we're going to be confronted with an issue where there are 10 notes, two of the note holders have been made whole. What happens to the recoveries? Does the insured note holder who's already been made whole get a double recovery? Does it mean that there's a windfall for the uninsured note holders? Why is that a windfall? That's what the waterfall provides, is that if the insured people don't get anything, the next people in line, or the people who are in line at the same level, but the insured people are excluded, then they get it. Then it comes after that to the CIRA, and then it goes after that to the poor junior certificate holders, who I gather are just screwed. But why isn't that a reasonable way of reading that? Here's why it's a windfall, Your Honor. The recoveries go to the senior note holders first, uninsured and insured. That's the provision. Here, where the senior note holders who were insured, those two insured note holders, do they get a double recovery as recoveries come in? No. In other words, Ambex paid them already. Right, so they don't get anything. So then the uninsured note holders, according to the district court's interpretation, get all of the balance of that. Well, that's how, excuse me, that's how this works out, given the weird things that happened, given that the mortgages turned out to be worth virtually nothing, I guess, so that nobody got anything in the first instance, and the insured people got covered. And then there are some dribs and drabs of recoveries. If you're saying there's not going to be anything left for you at the CIRA stage, it's not like the people who were uninsured, senior certificate holders, are somehow making out like bandits. They're getting a few bucks, and then they'll get what they get, and then you get. But if things had worked out differently, they would also get, it's come out the same as the insured, and then you would come out okay, and then again, it would be the junior certificate holders, or the lowest of the junior certificate holders, who get screwed. So I don't see that the fact that in one particular permutation of how bad the mortgages turned out to be, and how good the recoveries turned out to be, the uninsured senior certificate holders come out ahead of you. That's either what's provided or what's not provided. But they certainly don't come out exactly as well as the insured senior certificate holders, who are fat and happy sitting home with the money that they got from AMBAC, which is the way insurance works. They bought the insurance, and they got the benefit, and they are much better off than their uninsured compatriots. But the question that I'm focusing on, Your Honor, is there is going to be extra money in that recovery, because two of the ten note holders are not able to claim. So does AMBAC's insurance, does the benefit of AMBAC's insurance, get transferred to the insured note holders, essentially, because if there were no insurance— If that's, excuse me, if that's what the contract provides. If it doesn't provide, you know, there's this division. Is that what you're referring to, between two sets of senior holders? And so the recoveries come in in one, or they come in in the other? I'm not referring to the two-group nature. What I'm saying is you have two insured note holders, two insured notes, and then you have eight uninsured notes. Those are all senior notes. So if the two insured notes were not insured, if they were all uninsured notes, recoveries would come in. They'd be divided equally amongst the ten. Now, if AMBAC is not subrogated to those two, the other eight get all of the recoveries. It essentially transfers to the insured. That's just between you and them. That's got nothing to do with being a windfall. That's a question of, is this what the contract provides for? It's not absurd, is what I'm saying. It's not absurd that they get paid ahead of you. It would be absurd if somehow they came, on your argument, if the uninsured people wound up being in as good a position as the insured people. But that's never going to happen, because the insured people are already retired to Florida on the proceeds of their insured certificates, while the uninsured senior certificate holders are getting whatever they get by way of the recoveries. The only thing that's different is that they get slotted in ahead of you. And that either is or isn't provided for in the contract. It wouldn't be absurd to do it that way, especially if everybody contemplated that being in the position of the CIRA was going to be good enough. After all, lots of people contemplated that the junior certificate holders were mostly not taking extraordinary risks until you get down to the very bottom when they're getting high interest rates. So I just don't see why this is an absurdity. It effectively transfers the benefit of the insurance to the... Well, that's a wholly different thing. They should have gotten 8 tenths of the recoveries. Now they will get 10 tenths of the recoveries if AMBEC is not subrogated to that place. And AMBEC is entitled to be subrogated to any right of such a holder. And the reimbursement is not the right of a holder. I understand Your Honor raised the question of is it essentially like a prefatory and explanation. But as we explained on page 27 of our brief, in multiple places, these drafters used phrases like i.e. or thus when they meant to accomplish the kind of explanatory sort of throat clearing, you know, this is what we mean. So I know I've gone way over my time. I think we've got the arguments. Thank you to both of you. We appreciate your arguments and have a good day. Thank you.